Good morning, Your Honors. May it please the Court, Pete Patterson for the appellant, Gary Sanchez. I'd like to reserve four minutes, if I could, for rebuttal. This Court should reverse because California's law banning firearm suppressors implicates the Second Amendment for two independent reasons under this Court's precedence. First, under B&L Productions, banning suppressors meaningfully constrains the exercise of Second Amendment rights. Second, under Duncan, suppressors are necessary to the operation of suppressed firearms, which would be viewed as an integrated whole. That's enough to reverse, but this Court can and should go further because there is no historical tradition that would allow California to ban a particularly safe method of using firearms. Starting with B&L Productions, that is this Court's precedent that establishes when an ancillary restriction implicates the plain text of the Second Amendment, and California's suppressor ban does here. It meaningfully constrains the exercise of Second Amendment rights to make individuals choose between using firearms and experiencing, and their health, the health of their hearing. The CDC has said that suppressors are the only potentially effective noise control method to reduce noise exposure to firearms. Counselor, can't someone who's shooting a gun use ear protective, you know, I don't know, things to block the hearing? I mean, I don't know that that's absolutely correct. Well, that is a direct quote from the CDC. Your Honor, somebody can use those to also protect their hearing, but what the evidence that we've cited shows is that that is not always as effective. It does not, the protections does not exceed to the potential, you know, laboratory conditions. As we know from the experience in COVID, for example, the difference between a source control and personal protective equipment, it relies on using that equipment properly, which is not always the case. And the suppressor also protects individuals other than the shooter, and it preserves the ability of the shooter to communicate with others around them, and to hear other things happening in their environment. And anyway, in any event, under Heller, it's no answer to say that there's some other method individuals can use when the government says, okay, we're going to ban this method that you potentially could use. So... Are there any firearms that can't be properly discharged without a suppressor? There are some firearms that have integrated suppressors. Yes, Your Honor. And this gets to the alternative under Duncan. So one argument we have is under BNL production and meaningful impairment. The other argument we get to under Duncan is that a suppressor is necessary to the use of a suppressed firearm. And while that may appear a bit tautological, that is the sort of There's no necessity that a person use a magazine-fed firearm. There are revolvers that, for example, that don't use magazines. And yet Duncan said, we're going to look at the magazine and the firearm as an integrated whole, and a standard magazine we're going to hold is protected because that's necessary to the operation of a magazine-fed firearm. And similarly here, a suppressor is necessary to the operation of a suppressed firearm. An analogy to Duncan would be if someone invented some sort of super suppressor that really did silence a firearm or something like that, and California sought to ban that, then under the reasoning of Duncan, perhaps somebody could say, okay, that super suppressor is not protected, but the standard suppressor is. And so that's the same as in Duncan equivalent with the magazine situation where the court said the large capacity magazine is not covered, but a standard magazine is covered. And we can see even the federal government itself defines a suppressor as a firearm, and so we're not saying that that changes the meaning of the Constitution, but it just goes to show the degree to which the suppressor affects the functional operation of a firearm such that this should be viewed as a separate class of firearms goes to the fact that the federal government defines these as firearms. If your argument is correct, wouldn't a way around Duncan simply be to integrate a large capacity magazine into the gun? No, because what Duncan said is that the extra capacity of the magazine is not affecting the functionality of the magazine. What the magazine does, the functional operation it has, is to feed a round into the chamber. But that extra capacity doesn't... I'm trying to get around the problem that you pointed out, which is that it does feel illogical. And I think that you've made an interesting point about Duncan, but the point that you made about Duncan seems to be the cure for Duncan. That is, if you simply integrate a large capacity magazine, the firearm cannot be fired. A large capacity magazine firearm cannot be fired. Right. And I think what Duncan said is that the reason a magazine is protected is because the magazine, when it feeds that round into the chamber, it affects the operation of the firearm. What it said with respect to a large capacity magazine, and I'm, of course, accepting Duncan as binding precedent, what it said is that extra capacity of the magazine doesn't affect the functional operation of a firearm. So I don't think the argument I'm making here would be subject to the same sort of response. I'm not saying it's only permanently affixed suppressors that are protected. I'm saying every suppressor affects the functional operation of the firearm by managing the dissipation of gases to both reduce the noise and to reduce recoil on firearms. And this is essential for many uses of firearms, for training, which itself facilitates self-defense, that, you know, people are now able to do that in what the CDC says is the safest way, if they're able to use suppressors. For self-defense itself, the suppressor reduces the disorientation that's caused by firing a firearm, as well as managing recoil, and also for hunting. It allows hunters to hunt without exposing themselves to potential permanent hearing damage, which the CDC, again, says permanent hearing damage can be experienced from a single exposure to an unsuppressed firearm without otherwise having hearing protected. Does the suppressor make it more dangerous, though, for other folks? Not the ones using the gun, but let's say there's a shooting and to a mass crowd, you can't hear where it's coming from, or you don't hear it, or you're not sure that what you heard is a gunshot, so you don't take the appropriate cover. Does that matter? I don't think so. First, this would be to a historical tradition sort of argument, and what Heller and Bruin say is that firearms that are in common use simply can't be banned. But here, also, even this, even if it were just to look sort of a danger analysis, the suppressor makes firearms safer for those around them, because their hearing, too, could be impaired. And in terms of a shooting, the suppressed firearms are still the sound equivalent of a rock concert or an ambulance siren, so it's not like they are quiet. They are still very loud. It's just that they are below the threshold that the CDC would say would cause permanent hearing damage. And California doesn't have a single example, concrete example, of where something like what Your Honor suggested has occurred. And this shows why they can't meet any of the tests that either Heller or Bruin, we submit, apply or that Duncan applied. So under Heller and Bruin, we would say only dangerous and unusual firearms can be banned. And here, these are both in common use, and they're particularly safe uses of firearms. So that tradition could not be met. Under Duncan, there were uses of components that could cause infrequent but devastating harm. Here, the more apt law, if we were going to look at that tradition which dealt with firearm gunpowder storage laws, the founding would be to require people to use suppressors in certain circumstances, such as when training, because the suppressor is what protects individuals around someone using a firearm from harm. And then there was the unusually dangerous uses of weapons after they have proved particularly harmful. And here, suppressors both aren't unusually dangerous, and they haven't proved particularly harmful. There are millions of them in the United States. The Clark study that we cited said out of the thousands of federal gun control or gun prosecutions a year, 30 per year are for suppressors. The vast majority of those are victimless crimes, such as mere possessory offenses. And actually, unsuppressed firearms are more likely to be used to harm or injure a victim in a crime than a suppressed firearm. So there just is no way that California can say that suppressors have proved to be particularly harmful. So there is no plausible tradition of regulation that California could point to to support this ban. If we can go back to the Duncan-Ombank decision, as you probably know, it was on the panel opinion. But it is what it is. We have the Ombank opinion as binding. And I accept your argument. You said kind of tall logic under the reasoning of Duncan. Your argument kind of makes sense. On the other hand, there is that dicta where they mentioned suppressors. What do we do with that dicta? Yeah, well, what that dicta said is that a high-powered scope, a sling, or suppressor, even though it's attached to the firearm, is not necessarily protected by the Second Amendment. And we're not saying it's covered by the Second Amendment. We're not saying it's covered because it's attached to the firearm. We're saying it's because it affects the functional operation, the way the firearm actually fires, such that just as with a magazine, it should be looked at as an integrated whole. The same reasoning would not necessarily apply to the sling or the scope in that same sentence. So I think what Duncan was answering there was saying, okay, just because something is attached to a firearm, that doesn't make a regulation of that covered by the Second Amendment. And we're not relying on just the mere fact that it's attached. And so I think when that statement is looked at in context, and Duncan's reasoning with magazines, shows that actually the better reading of Duncan would be that suppressors would be covered. Because that sentence, one, it's dicta, two, it's not making a definitive conclusion. It's just saying it wouldn't necessarily be protected because it's covered. But then we also have B&L Productions, which, again, is a separate path to protection to say that anything that meaningfully constrains the exercise of Second Amendment rights, implicates the plain text of the Second Amendment. And again, if someone has to choose between their hearing and using a firearm, that is a meaningful constraint on the exercise of Second Amendment rights. Of course, the core of the Second Amendment seems to be self-defense. So if one is forced to defend oneself, one may or may not have time to attach a suppressor if it's not already there. One may have chosen not to put the suppressor on because it makes the gun more cumbersome, more difficult to get out of wherever it's been holstered or sequestered. So I'm not sure how B&L, that's a very, very high level of abstraction because it doesn't meaningfully constrain the core right of the Second Amendment to self-defense. Well, it's not, it doesn't impair the shooting of the gun. Well, Your Honor, I'll respond in a few ways, Your Honor. First, the Second Amendment protects all lawful uses. That's what Heller says. That's what Bruin says, whether things are in common use for lawful purposes. Heller specifically mentions hunting. It talks about training. So those are clearly covered. But even if we're going to look just at self-defense, training itself facilitates self-defense. California requires people to train to get carry licenses. It's obviously something that is beneficial. And again, the CDC, this was in a NIOSH report about students and trainers at training facilities said that the only potentially effective noise control method for reducing students and trainers exposure to noise from firearms is suppressors. So the banning of suppressors meaningfully constrains training. And training, I think everyone would agree, is a protected activity that itself facilitates self-defense. And then with respect to self-defense itself, banning suppressors does meaningfully constrain that. Your Honor mentioned you may not have time to put on a suppressor, but you can store your firearm with a suppressor. And you almost certainly are not going to have time to put on earmuffs or earplugs. And you probably wouldn't want to because you still would want to be able to communicate with people around you and hear what is happening. And so banning suppressors meaningfully constrains the act of self-defense itself. And again, a gunshot is very loud, unsuppressed. It's equivalent to about a jet engine. It can cause disorientation for someone particularly that's not frequently doing it. And so putting a suppressor on actually affects and helps a person to be more effective in a self-defense scenario. And also, as I mentioned, hunting is a protected activity. Heller specifically said people valued the right to keep and bear arms for hunting at the founding. And banning suppressors also meaningfully constrains hunting. So I don't think this is implausible or in any way a stretch to say that banning a suppressor meaningfully constrains the Second Amendment, whether you're looking at self-defense or all the various purposes that the Second Amendment protects. And it's important that we're talking about a possession ban here. And so that's why all lawful purposes are particularly important because a possession ban means that people can't use this item for any of the purposes protected by the Second Amendment. Maybe if we were just looking at a carry restriction or something like that, then you would focus more specifically on self-defense if that's what the carrying was for. But here, California is banning people from using suppressors in any and all circumstances. If there are no further questions, I'll save the remainder of my time. Thank you. Thank you. Good morning, Your Honors, and may it please the Court. Kevin Quaid for California Attorney General Rob Bonta. Your Honors, I think the answer to the question presented in this case is a simple one. Under the analytical framework articulated in Bruin in this Court's en banc decision in Duncan, firearm silencers are not presumptively protected at the threshold Bruin analysis under the plain language of the Second Amendment. They are not themselves arms under the Second Amendment because they're not weapons. They cannot be used to cast out in an offensive or defensive manner to strike someone. And they don't fit within the corollary right that this Court has recognized with respect to components that are integral to firing of a weapon, to the operation of a weapon, to armed self-defense. This ends the constitutional inquiry. And indeed, there's a uniform consensus of nearly a dozen federal courts that have addressed this issue and all found that firearm silencers do not fit within the Constitution's protection. Do you agree with your friend on the other side that suppressors can be useful for self-defense purposes? I think they can be useful. I think under the Duncan decision, though, that panel explained that mere heightening, mere benefit in a self-defense scenario is not enough to convey constitutional protection. And it stands to reason a large capacity magazine having more bullets might also be beneficial in the case of an armed confrontation. But benefit isn't what confers protection under the Second Amendment. It is whether it is an arm or integral to use of the weapon in a self-defense scenario. Is there any indication that suppressors are actually used for criminal purposes or enhances criminal purposes? I think there are. There are. It is rare, to be sure. There are instances where suppressors have been used in criminal situations. But again, I don't think that's the relevant analysis, because I think the same thing could have been said about large capacity magazines, which were widely owned and yet rarely used for mass shooting criminal purposes. So if they're not arms, the analytical framework would just be, what, just rational basis? Yeah, I think that's right. If they're not arms or if they fit into this court's corollary right under FIOC and Jackson. Could California ban recoil pads, pads they use for shooting rifles so there's less recoil, you don't get injured, and you have more accurate shooting? I think the analysis would turn, well, that obviously wouldn't be a weapon. It would be beneficial. And I think the analysis would turn in that case whether there was evidence that it was integral to the operation of a gun. And as I'm sitting here working through that, I don't think it would be. So things like arm braces, and federal courts have found that shoulder braces, things of that manner that aid in the use of a firearm are not subject to the Second Amendment's constitutional protection. It's sweeping power for the state to ban things that are used for lawful purposes and probably pose no danger. But under your reading of Duncan, it seems like California can ban anything that actually is helpful to gun owners, actually makes it more safe to use. Yeah, and I mean, I'm applying the Second Amendment analysis articulated by this court and articulated by the Supreme Court in Bruin. California has not, to my knowledge, banned those. And there is a danger that is at the heart of our ban on firearm silencers that may not be at issue with certain other types of aid devices. But I think as a constitutional matter, if an item is not itself a weapon or does not fit into the corollary right that this court has recognized, then at step one of Bruin, it is not entitled to presumptive constitutional protection. And that ends the constitutional inquiry. That's what the district court found in this case. And that's what this court need go no further than making that particular finding. It seems like the state could justify taking and banning virtually anything related to guns because on the theoretical notion that a criminal can also use this and may help the criminal, even if there's almost no instances of it, then the state can ban it. I, you know, I'm, I'm not. On a rational basis, I mean, that state can basically do that. It doesn't matter, you know, if there's no virtually no empirical evidence or almost defies common sense, but, you know, it's quote unquote rational basis. They can just ban it. I mean, because, again, I don't see how recoil pads really pose any danger. And actually, they're very helpful to lawful gun owners. But I think under your logic, they can ban those. Well, sure. And I don't claim to be an expert on that particular item. I, I, I think the constitutional question, there is a clear analytical framework that this court must work through in terms of determining if a particular item is, is within the plain text of the constitution. Now, there may be all sorts of policy reasons that a state may choose to allow a particular device or ban a particular device. Sounds like if a device is, is, is purely beneficial and poses no harm, the policy might be that, that a state would want to allow that. I, it's not my decision to make, obviously. But for constitutional purposes, the, the, the silencers at issue here, the, the device that California bans that's at issue in this case, is not a weapon and is not integral to the operation. If, if I can, I, I want to touch on my friend's argument about integrated silencers and firearms. And I think Judge Bybee, you touched on it, that, that essentially that would allow firearms manufacturers to, to, to engineer devices in a way that render devices that are, are banned by statute and not covered by the Second Amendment, to engineer them into the scope of the Second Amendment. And there's no court that's found that that is permissible. But I think there's an, there's another reason why that example really isn't relevant here. And that's, that my friend on the other side is bringing a facial challenge seeking to invalidate California's silencer ban in all its applications. And there's no allegations here. There's no as-applied challenge that Mr. Sanchez wants an integrated firearm. The record here shows that he would like to 3D print a firearm at home for use with an AR-style assault weapon, not an integrated, one of these few firearms that have been manufactured with a silencer affixed to it. So I just don't think under this case, and, and, and there might be arguments even in an as-applied challenge we would certainly make for why that type of weapon was also permissibly banned. But that's not the case the court has before it here. I'll just note a few things. My colleague on the other side noted that even with a suppressor being used, that a firearm discharge can be the decibel level of a rock concert or other loud noise. And that's certainly true. But I think there are real dangers associated with use of a firearm, even though it still produces a noise, a muffled noise. There have been instances where in shooting scenarios, witnesses and potential victims mistook the sound for nail guns, for instance. That precious seconds in which potential victims were not aware of what was happening, the circumstances that were happening that allowed them to flee the danger, to take cover, to prepare to fight. Those seconds are lost when a muffled firearm sound basically deprives potential victims of an awareness of what is going on. And really, this gets me back to Duncan. I mean, that was really a heart of the dangerousness of large capacity magazines. That the legislature in that case and the court credited that the pauses for reloading that allowed potential victims to run away, to prepare to fight, were integral to the dangerousness of that particular firearm accessory. We see the dangerousness of silencers as quite similar in that way. Counsel, though, your friend on the other side went to great lengths to explain to us statistically, though, it's not a really relevant point in that a lot of times these crimes are not committed with silencers. The people who are doing these mass shootings or anything like that, they're not using silencers. So what does that do to your argument? I think it doesn't change the argument about the dangerousness. That just like the large capacity magazines in Duncan, which were thankfully in the court recognized, not used with high frequency. But when they were used, added tremendous amount of danger to potential victims. I think silencers do the same thing here. That yes, it is true that silencers are not used in many crimes. But when they are used, they present the type of super added danger that California can that allows California to ban use of that particular device based on that extraordinary danger. I'm happy to answer any other questions the court has. But if not, we're prepared to submit and ask that the district court's dismissal be affirmed. Thank you. Thank you so much. Just a few points, Your Honor. First, with respect to suppressors and the firearm being viewed as an integrated whole, I'm not saying that's just for suppressors that are permanently affixed as a firearm. I'm saying that under Duncanson's reasoning with respect to magazines, even detachable suppressors should be viewed as an integrated whole with the firearm such that they're necessary for the operation of a suppressed firearm. With respect to suppressors potentially making some sort of shooting worse, California has not pointed to a single concrete example where that has happened. And that speculation clearly can't be enough. What Duncan said in accepting this tradition under Duncan, which that part of Duncan was dicta since the court had held that large capacity magazines weren't protected in any event. But what it said was that the government could address unusually dangerous uses of weapons after they had proved to be particularly harmful. Here, California speculates about how suppressors possibly could be used to make a crime worse. But there is no concrete evidence that they've offered of that. And it's not very plausible, given, again, that suppressed firearms are still very loud. It's remarkable that California admits that suppressors can be useful in self-defense and that they're almost never used in crime. And somehow this does not even implicate the plain text of the Second Amendment. And I would say if that truly is correct, then we are making the Second Amendment a second class right. For example, in the First Amendment context, the Supreme Court has said that laws restricting noise amplification devices implicate the First Amendment. There was the case Ward v. Rockingham's Racism, which the court held that that case, the restriction passed First Amendment muster. This was about a city controlling volume from a band shell. So what if California had a time, place, and manner restriction here and said, well, you can use it in training because we think that training and this would protect ears and having both the head coverings or the ear coverings plus a suppressor would be a very safe way to do that. But for a variety of reasons that the state has articulated, once we get to the context of out on the street for self-defense, where self-defense is likely to be sort of a one-off situation, then they're going to be banned. Now, would you accept that? I would not. Well, first, I would accept the premise of that question seems to be that it implicates the plain text. So yes, that's the point I'm making the First Amendment analogy to even the yes. And you're saying I think it breaks down because now you've got this is a time, place, and manner restriction. Well, a time, place, and manner restriction is a speech restriction. It implicates the First Amendment. It has to pass the time, place, and manner scrutiny. And so the First the Second Amendment analysis is very similar to the First Amendment in the sense that, OK, there are lots of laws that implicate the Second Amendment or implicate the First Amendment. And then there are exceptions from history that come in in the First Amendment. There are things like fraud, fighting words, things of that nature. But that doesn't mean that they're not literally speech, that they don't implicate the First Amendment. That means that there's a tradition of regulation into which those laws fit and similar with the time, place, and manner restriction. So if California were to say, OK, we are going to allow suppressors, but only for training, that would implicate the Second Amendment. The question would be whether there's a historical tradition that would allow that. Our response would be no, since suppressors are not dangerous and unusual. They are in common use for lawful purposes. And there's no basis, again, to ban a particularly safe method of using a firearm. But even if Your Honor were to disagree with me on that, that would not save California's law here because their law is a flat ban on suppressors. They can't be used in any circumstance. So that law is unconstitutional. California could come back and try something else. We perhaps would challenge that too. But for purposes of this case, all the court has to decide is that, A, banning suppressors implicates the plain text of the Second Amendment, which, again, we submit does both under Duncan and under B&L Productions, which I didn't hear California address much as a meaningful constraint. And then, B, there's no tradition of regulation that would allow a flat ban of a particularly safe method of using firearms. If there are no further questions. Thank you. Thank you, both, for the excellent oral arguments. The case is submitted. And we are recessed for the day. I'll rise. The court shall stand and recess for today. Thank you.
judges: BYBEE, LEE, ALBA